# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONYA BLANTON, et al.,<br><br>                            Plaintiffs,<br>v.<br>TORREY PINES PROPERTY MANAGEMENT, INC., et al.,<br>                            Defendants. | Case No.: 15-CV-0892 W (NLS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DOC. 72]** |

      Pending before the Court is Defendants' Motion to Dismiss Plaintiffs' first two causes of action for lack of subject matter jurisdiction. [Doc. 72.] Plaintiffs Monya Blanton and Diane Joa oppose. [Doc. 73.] The Court decides the motion on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion.

//
//
//
//
//

1

# I. BACKGROUND

## A. Monya Blanton

Monya Blanton allegedly began renting an apartment managed by Torrey Pines Property Management ("TPPM") in September of 2011. (*Second Amended Complaint ("SAC")* [Doc. 13] ¶ 13.) Corinne Lampman, an employee of TPPM, allegedly told Blanton during the application process that she and her three children could not rent a two-bedroom apartment, but rather would have to rent a more expensive three-bedroom unit.[1] (*Id.*) The SAC alleges that Blanton then rented the more expensive unit. (*See id.*)

According to the SAC, Blanton was pregnant with her fourth child in January of 2013. (*SAC* [Doc. 29] ¶ 14.) At that time, the apartment complex's manager, Peggy Warny, allegedly told her that her lease would not be renewed if she exceeded the occupancy limit of four residents. (*Id.* [Doc. 13] ¶¶ 7, 14.) TPPM allegedly raised the rent for Blanton's apartment in May of 2013. (*Id.* [Doc. 13] ¶ 15.) The SAC alleges that the next month, Blanton informed Warny that for medical reasons she could not access her bank account in order to pay her July rent on time. (*See SAC* [Doc. 13] ¶ 16.) Warny told Blanton that TPPM would accept her rent after the due date. (*Id.*)

When Blanton attempted to pay her rent after giving birth to her fourth child on July 13, 2013, TPPM allegedly returned the rent payment to her by taping it to her door. (*SAC* [Doc. 9] ¶ 17.) TPPM thereafter informed Blanton that the payment was deficient for lack of late fees. (*Id.*) Before the end of July, TPPM evicted Blanton and her family. (*See id.*) Blanton alleges that her eviction was a result of her violating the occupancy policy. (*See id.*)

//
//
//

---

[1] Blanton alleges that TPPM enforces an occupancy policy. (*See SAC* [Doc. 29] ¶ 9.) According to the SAC, this policy restricts occupancy to one person per bedroom plus one. (*See id.*)

### B. Diane Joa

Diane Joa was another resident at the same property managed by TPPM. (*SAC* [Doc. 29] ¶¶ 13, 18.) She and her five children, two of whom were minors at the time, began renting a three-bedroom apartment in 2009. (*See id.* [Doc. 13] ¶ 18.) Pursuant to TPPM's occupancy policy, the TPPM manager refused to include two of Joa's adult sons on the lease. (*Id.*) In May of 2013, Joa and her family executed a new lease with TPPM through Warny. (*Id.* [Doc. 29] ¶ 19.) The lease Warny prepared for Joa and her family also excluded two of her children, both adults. (*See Joa Depo.* [Doc. 72-4, Exh. 1; Doc. 73-3, Exh. B] 12–13, 42–45; *2013 Joa Lease* [Doc. 73-3, Exh. C].)

On April 28, 2014, TPPM sent Joa a "Three-day Notice to Perform Conditions and/or Covenants or Quit" as to the number of occupants in her unit. (*Three-Day Notice* [Doc. 73-3, Exh. E].) Joa received an eviction notice three days later. (*Eviction Notice* [Doc. 73-3, Exh. F].) Her adult son Michael Howard then moved out of the unit so that the family could remain. (*See Michael Howard Intent to Vacate* [Doc. 73-3, Exh. G].) Apparently Joa was allowed to remain, as the next year, TPPM sent Joa another notice as to the number of occupants in her unit, causing to spend another $100 to add her adult son Douglas Howard to the lease. (*See Resident Change Addendum* [Doc. 73-3, Exh. I].)

### C. Procedural History

Joa and Blanton filed this action on April 22, 2015. (*Compl.* [Doc. 1].) The SAC asserts seven causes of action against TPPM and its employees: (i) violation of the federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601, et seq.; (ii) violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code §§ 12927, 12955, et seq.; (iii) violation of the Unruh Act, Cal. Civ. Code § 51; (iv) breach of the covenant of quiet use and enjoyment; (v) invasion of privacy; (vi) unfair business practices in violation of Cal. Bus. & Prof. Code § 17200; and (vii) negligence. (*SAC* [Doc. 29] ¶¶ 34–47.)

//

Defendants now move to dismiss both Plaintiffs' first and second causes of action only, on the basis that both plaintiffs lack standing.[2] (*See Defs.' Mot.* [Doc. 72-1].) Plaintiffs oppose. [Doc. 73.]

## II. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Standing

The Court must dismiss a cause of action for lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). "The party asserting federal subject matter jurisdiction bears the burden of proving its existence." Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010) (citing Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994)). Article III of the United States Constitution limits the subject matter jurisdiction of federal courts to "Cases" and "Controversies." Lujan v. Defs. of Wildlife, 504 U.S. 555, 559 (1992). This limitation forms "the core component of standing[,]" a doctrine that ensures federal courts decide only those cases "that are of the justiciable sort referred to in Article III[,]" those that are " 'appropriately resolved through the judicial process[.]' " Id. at 560 (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)).

As an "irreducible constitutional minimum" and a constraint on federal courts' subject matter jurisdiction, standing is a fundamental part of every federal case. See Lujan, 504 U.S. at 560; Chandler, 598 F.3d at 1122. It consists of three elements—all of which the party asserting federal jurisdiction must establish: (i) injury; (ii) causation; and (iii) redressability. See id.

---

[2] Defendants do not specify which causes of action they seek to dismiss. Their motion discusses only the legal standards applicable to the two statutes invoked in the first two causes of action. Accordingly, the Court construes this motion as seeking to dismiss the first two causes of action only.

4

> First, the plaintiff must prove that he suffered an "injury in fact", i.e., an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."
>
> Second, the plaintiff must establish a causal connection by proving that [his] injury is fairly traceable to the challenged conduct of the defendant.
>
> Third, the plaintiff must show that [his] injury will likely be redressed by a favorable decision.

Chandler, 598 F.3d at 1122 (quoting and citing Lujan, 504 U.S. at 560–61) (internal citations omitted).

Upon a 12(b)(1) motion facially attacking subject matter jurisdiction, the Court assumes true all allegations of fact in the Complaint and draws all reasonable inferences in the plaintiff's favor. See Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009) (quoting Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004)); see also City of Los Angeles v. Wells Fargo & Co., 22 F. Supp. 3d 1047, 1052 (C.D. Cal. 2014). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Meyer, 373 F.3d at 1039. "If the moving party converts 'the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.'" Wolfe, 392 F.3d at 362 (quoting Meyer, 373 F.3d at 1039).

//
//

# III. DISCUSSION

## A. Plaintiff Diane Joa Lacks Standing to Maintain her FHA and FEHA Familial Status Discrimination Causes of Action.

Defendants pose a factual attack on the Court's jurisdiction over Joa's first two causes of action. They present evidence that Joa could not have been injured by Defendant's allegedly discriminatory housing practice because by the time TPPM took action against her because of occupancy issues, all of her children were above the age of majority. (*See Defs.' Mot.* [Doc. 72-1] 3:18–7:12.)

The term "familial status," as used in the Fair Housing Act, is restricted to individuals "who have not attained the age of 18 years." 42 U.S.C. § 3602(k). California's FEHA contains the same restriction. See Cal. Gov. Code § 12955.2.

Defendants first leased to the Joa family in 2009. (*See 2009 Joa Lease* [Doc. 73-3, Exh. A].) At that time, according to evidence filed along with Defendants' motion, two of Plaintiff Joa's children were minors, and Defendants knew that all five of Joa's children lived with her in the apartment. (*See Joa Depo.* [Docs. 72-4, Exh. 1; Doc. 73-3 Exh. A] 12–13, 24–25, 26–27.) Despite apparent knowledge of the fact that six people were living in a three-bedroom apartment, Defendants appear to have acquiesced to the breach of their alleged occupancy policy for a number of years. (*See Id.* [Doc. 72-4, Exh. 1; Doc. 73-3, Exh. A] 24–25.) In May of 2013, the Joa family executed a new lease with TPPM, which again included as occupants only three of Joa's five children—who by this point were all adults. (*See id.* [Doc. 72-4, Exh. 1; Doc. 73-3, Exh. A] 12–13, 42–45; *2013 Joa Lease* [Doc. 73-3, Exh. C].)

On April 28, 2014, TPPM first began to enforce its occupancy policy against Joa, when it sent her a three-day notice as to the number of occupants in her unit. (*Three-Day Notice* [Doc. 73-3, Exh. E].) Joa received an eviction notice three days later. (*Eviction Notice* [Doc. 73-3, Exh. F].) Her adult son Michael Howard then moved out of the unit so that the family could remain. (*See Michael Howard Intent to Vacate* [Doc. 73-3, Exh. G].) The next year, TPPM sent Joa another notice as to the number of occupants in her

unit, thereby causing her to spend another $100 to add her adult son Douglas Howard to the lease. (*See Resident Change Addendum* [Doc. 73-3, Exh. I].)

By the time TPPM enforced the allegedly discriminatory policy against Joa's family, all members of the family had reached 18 years of age. (*See Joa Depo.* [Doc. 72-4, Exh. 1; Doc. 73-3, Exh. A] 12–13 (containing the birthdates of all members of the Joa family).) Thus, all of Joa's family members were outside the definition of both the state and federal statutory definitions of familial status. See 42 U.S.C. § 3602(k); Cal. Gov. Code § 12955.2. Even assuming for the sake of argument that TPPM's occupancy policy did discriminate on the basis of familial status, by the time TPPM enforced it as to the Joa family it could not have caused her harm on that basis because there was no one under 18 in the family at that time. Indeed, every member of the family was at least 18 when the then-operative lease was executed in 2013. (*See Joa Depo.* [Doc. 72-4, Exh. 1; Doc. 73-3, Exh. A] 12–13; *2013 Joa Lease* [Doc. 73-3, Exh. C].)

Joa contends that her minor children suffered familial status discrimination from the date her family first moved in, when two of her children were still minors. (*See Pls.' Opp'n* [Doc. 73] 5:25–6:9.) According to her, "[t]hough Joa was able to physically have all of her children residing in the unit with her, Joa's children were not able to live . . . with all the rights a named occupant would have on the lease." (*Id.* [Doc. 73] 6:3–5.) Joa continues, "[b]y defendants not allowing Joa to name all of her children on the lease, defendants forced Joa's children to live in a precarious situation where they could be evicted at any point." (*Id.* [Doc. 73] 6:5–7.) The problem with this is that TPPM did not actually enforce the occupancy policy at issue while there were any minors in Joa's family. Because TPPM never enforced the policy against Joa's family until all of its members had reached the age of majority, the fact that it could have done so is a mere counterfactual—not a concrete injury sufficient to confer Article III standing. See Chandler, 598 F.3d at 1122.

Plaintiff Joa's first two causes of action, for violation of the FHA and California's FEHA, respectively, will be dismissed for lack of standing. See Fed. R. Civ. P. 12(b)(1).

7

## B. Plaintiff Monya Blanton

Defendants bring a factual attack on the Court's jurisdiction over Plaintiff Blanton's first two causes of action by contending that: (1) TPPM allowed her to move into a three-bedroom apartment with three children while pregnant, thus ostensibly failing to apply their own occupancy policy; and (2) TPPM ostensibly then waited a year and a half after the child was born before finally evicting Blanton. (*Defs.' Mot.* [Doc. 72-1] 7:14–10:10.)

Even if Defendants are correct on both points, this does not imply the absence of standing. Defendants fail to address allegations in the SAC that TPPM denied Blanton access to a two-bedroom unit, causing her to rent a larger and more expensive unit because of her familial status[3]—or that TPPM subsequently evicted Blanton for the same reason. (*See SAC* [Doc. 29] ¶¶ 13–17.) They provide no cogent reasoning as to why these injuries might be insufficient to confer standing, or as to why causation or redressability might be lacking here. See Chandler, 598 F.3d at 1122.

Defendants' motion as to Plaintiff Blanton will be denied.

//
//
//
//

---

[3] Defendants represent to the Court in a footnote that, "[t]hough not at issue for purposes of this [m]otion, discovery has made it apparent that "[Blanton's] claim [as to the availability of the two-bedroom unit] cannot be true, for evidence has clearly substantiated that the 2-bedroom unit . . . [Blanton] alleged to have been 'perfect' for her had already been rented prior to her looking at the subject unit." (*Defs.' Mot.* [Doc. 72-1] 8:1 n.4.) They provide no citations to any evidence whatsoever to substantiate these assertions.

Defendants are incorrect that injury in fact is not at issue in an Article III standing inquiry. See Chandler, 598 F.3d at 1122.

As Defendants do not support their representations on this point with any evidentiary citations, the Court disregards them.

8

### IV. CONCLUSION & ORDER

In light of the foregoing, Defendant's motion to dismiss for lack of standing is **GRANTED IN PART AND DENIED IN PART.** [Doc. 72.]

Specifically, Plaintiff Joa's first two causes of action are dismissed.

The motion is otherwise denied.

**IT IS SO ORDERED.**

Dated: April 20, 2017

Hon. Thomas J. Whelan
United States District Judge